IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| WILLIAM DEXTER WHITE | § | |
| v. | § | CIVIL ACTION NO. 6:05cv26 |
| MAJOR RONALD FOX, ET AL. | § | |

### AMENDED MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff William Dexter White, an inmate currently confined in the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding. 28 U.S.C. §636(c), although White has challenged the validity of this consent, a point which will be discussed below.

White raised a large number of claims in his lawsuit. An evidentiary hearing was conducted pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985) on August 18, 2005. Following this hearing, the Court dismissed White's claims as frivolous. White filed his notice of appeal on September 19, 2005.

On October 6, 2008, the Fifth Circuit reversed and remanded the decision in part. While most of the district court's decision was upheld, the Fifth Circuit reversed as to two issues, one of which related to the alleged lack of notice of the statement of evidence relied upon in a disciplinary case which White received, and the other of which concerned an alleged designation of White as a "snitch." In the first of these issues, the Fifth Circuit explained as follows:

> While the majority of White's claims [concerning a disciplinary case he received] are without merit, this court must address White's argument that his constitutional rights were violated because he failed to receive a written report of the statement of evidence relied upon in the disciplinary case. White argues that he was provided a [sic] incomplete copy of the written reasons and was forced to file his administrative

1

appeal based on the incomplete copy. Then, after he filed the administrative appeal, prison officials completed the disciplinary findings by altering the documents he had filed into the record.

Our opinion in Mahogany v. Stalder, 242 Fed.Appx. 261 (5th Cir. 2007), though unpublished and not binding precedent, is instructive here. In Mahogany, a prison disciplinary board found Mahogany guilty of fighting and sentenced him to four weeks cell confinement and forfeiture of ninety days of good time credits. After exhausting the two-step prison grievance procedure, Mahogany filed a §1983 civil rights action, alleging that the disciplinary proceeding violated his right to procedural due process because he did not receive a written statement of the evidence relied on during the proceeding or the reasons for the disciplinary action. In his prayer for relief, Mahogany asked the Court to (1) restore his forfeited good time credits; (2) reverse the disciplinary board's decision and expunge the results of the disciplinary proceeding from his prison record; and (3) award him monetary damages. The court held that even though Mahogany's claims for reversal of the board decision, expungement of the disciplinary proceedings, and restoration of good time credits were barred by Heck, Mahogany's §1983 action claiming a violation of due process from the prison officials' failure to provide a written statement of evidence in his disciplinary board proceeding was not barred.

Thus, the Fifth Circuit identified the first claim which was remanded by saying that "a claim for damages based on a failure to receive a written statement of the evidence relied on in a prison disciplinary proceeding is cognizable under §1983."

White's second claim which was remanded was discussed by the Fifth Circuit as follows:

White complained that prison officials acted with deliberate indifference to his safety for falsely labeling him a "snitch" and then transferring him to another unit where he was subjected to violent physical and sexual assaults. White testified during the Spears hearing that this designation had a negative impact on him when he was transferred to the Darrington Unit, yet the Magistrate Judge erroneously concluded that White had suffered no harm from this designation and his subsequent transfer.

White argues that this cause of action accrued in the Eastern District of Texas, that the injuries incurred in the Darrington Unit were the result and continuation of decisions made in the Eastern District of Texas, and that the court erred in severing and transferring claims. White alleges that he was designated a snitch at the Michael Unit, in the Eastern District of Texas, and this designation continued when he was transferred to the Darrington Unit in the Southern District of Texas.

We cannot say that White's snitch claim is "indisputably meritless" or "wholly incredible" such that it lacks an arguable basis in law or fact because the records on which the district court relied have not been made part of this record. [citation omitted] The district court found that White's claims in the Eastern District of Texas, including those claims arising at the Michael Unit, should be dismissed as frivolous. The court further found that the remaining claims, including those arising in the

Darrington Unit, should be severed and transferred to the Southern District of Texas.

Remand is necessary to determine whether the transfer of the claims arising in the Darrington Unit was appropriate. This will depend on the district court's reconsideration of the snitch designation and the alleged injuries suffered as a result of that designation.

After the remand, the Court ordered two defendants, Major Ronald Fox and Captain Robert Taylor, to answer the lawsuit. Taylor was the hearing officer who presided over the disciplinary case at issue, and Fox is the officer who allegedly labeled White a "snitch" and had him transferred to the Darrington Unit.

On January 15, 2010, Fox and Taylor filed a motion for summary judgment. In this motion, Taylor argued that White did receive a statement of the evidence used against him at the disciplinary hearing, and that while additional information was added to the form after the hearing, it did not give White anything more than he already knew.

Major Fox argued that he did not have the authority to order a unit transfer for White and that he never designated White as a "snitch." He points out that after White arrived at the Darrington Unit, he, White, filed three separate life endangerment claims between June and October of 2003, each of which were investigated and found no substantiated threat to White's safety. Furthermore, Fox says, nothing in White's prison records shows that he ever provided confidential information to TDCJ, and Fox denies ever using White as an informant or telling anyone that White was an informant. He says that White's assertions that Fox labeled him as a "snitch" are "conclusory allegations unsupported by any of the evidence." White has filed a lengthy response to the motion for summary judgment.

Legal Standards and Analysis

General Standards for Summary Judgment

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and

3

that the moving party is entitled to judgment as a matter of law. Securities and Exchange Commission v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1994); General Electric Capital Corp. v. Southeastern Health Care, Inc., 950 F.2d 944, 948 (5th Cir. 1992); Rule 56(c), Fed. R. Civ. P.

To avoid summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue concerning existence of every essential component of that party's case; unsubstantiated assertions of actual dispute will not suffice. Thomas v. Price, 975 F.2d 231, 235 (5th Cir. 1992), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Fifth Circuit has stated that once the moving party has met its burden, the nonmovant must direct the court's attention to admissible evidence in the record which demonstrates that it can satisfy a fair-minded jury that it is entitled to a verdict in its favor. ContiCommodity Services, Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

Summary judgment should be granted when the moving party presents evidence which negates any essential element of the opposing party's claim, including a showing that an essential element of the opposing party's claim is without factual support. First American Bank & Trust of Louisiana v. Texas Life Ins. Co., 10 F.3d 332, 334 (5th Cir. 1994). The granting of summary judgment is proper if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Caldas & Sons v. Willingham, 17 F.3d 123, 126 (5th Cir. 1994). Once the movant makes this showing, the burden shifts to the non-movant to come forward with evidence sufficient to establish the existence of a genuine issue of material fact. Caldas, 17 F.3d at 126-27.

Although the Court must draw all inferences in favor of the party opposing the motion, an opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. Hulsey v. State of Texas, 929 F.2d 168, 170 (5th Cir. 1991); *see also* Gordon v. Watson, 622 F.2d 120 (5th Cir. 1980) (litigants may not oppose summary judgment through unsworn materials). Similarly, a bald allegation of a factual dispute is insufficient, in itself, to create a genuine issue of material fact. Recile, 10 F.3d at 1097 n.15. A non-movant cannot manufacture a

4

factual dispute by asking the Court to draw inferences contrary to the evidence. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In short, a properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists. Hulsey, 929 F.2d at 170, *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

### I. The Disciplinary Case

As the Fifth Circuit observed, White complains that he did not receive a statement of the evidence upon which the disciplinary hearing officer relied in arriving at a finding of guilt. He also asserts that the records were "falsified," saying that additional information was added after he received the original copy of the hearing report.

In support of his claims, White attaches two copies of the disciplinary hearing record. The first of these is the record which White says that he received at the time of the hearing. This document, attached to White's original complaint as "Exhibit A," sets out the charge, gives the time and date that White was notified, and reflects White's plea of not guilty. There is a section for unusual events at the hearing, including: if counsel substitute was not present during part of the hearing; if the accused inmate was confined in prehearing detention more than 72 hours prior to the hearing; if the accused was excluded from any part of the evidence stage; if any witnesses or documentation was excluded from the hearing; if the inmate was denied confrontation or cross-examination of a witness at a hearing; or if the hearing was not held within seven days, excluding weekends and holidays, from the date of the offense, or if an interpreter was used. This section of the form is blank.

The document shows that the hearing was held on December 30, 2002, and that White was found guilty. Under the finding of guilt, there is a section which says "if guilty, evidence presented, considered, and reasons(s) for determination of guilt: A) admission of guilt, B) officer's report, C) witness testimony, D) other (explain in detail)." The "B" is circled, indicating that the offense report was the evidence relied upon for the determination of guilt.

The form then goes on to list the available punishments, specifying that White received 45 days of commissary restriction, 45 days of cell restriction, 15 days of solitary confinement, reduction in classification status from Line Class I to Line Class III, and the loss of 500 days of good time credits. White signed the form, acknowledging that he received a copy.

Another copy of the same form is attached as Exhibit D to the original complaint. White hand-wrote on the form that he received it at mail call on February 21, 2003. On this copy of the form, the section for unusual events at the hearing had number 3), if the accused was excluded from any part of the evidence stage, circled and then crossed out, and a circle around 4), if any witnesses were excluded from the hearing. In the blank under this section is written "Witness denied - no direct knowledge and due to [illegible] risk." Underneath the section regarding the evidence considered is written "Officer's report and testimony, evidence presented." Underneath the section regarding the reason for the punishment is written "Extortion serious offense, violates TDCJ policy and procedures." White asserts that these changes to the form he received show that it was altered after the hearing.

A review of the documents furnished by White show that he did receive a written statement of the evidence relied on at the conclusion of the hearing, albeit an abbreviated one. The copy of the form which White acknowledged that he received at the hearing had a space on the form circled indicating that the officer's report was the evidence relied upon for the finding of guilt. The Fifth Circuit has specifically held that in a prison disciplinary proceeding, an officer's report, even standing alone, is "some evidence" of guilt. Hudson v. Johnson, 242 F.3d 534, 537 (5th Cir. 2001), *citing* McPherson v. McBride, 188 F.3d 784, 786 (7th Cir. 1999). White thus had sufficient written notice of the evidence relied on in order to prepare an appeal, and his contention that he did not receive any statement of the evidence relied upon is incorrect and without merit.

White also complains that the hearing record was "altered." This claim is not part of the remand from the Fifth Circuit, which mentioned only White's contention that he did not receive a written statement of the evidence relied upon. Even if this claim were part of the remand, however,

it is patently without merit. While the documents which White furnished do appear to show that additional information was added to the hearing record, White makes no showing that this alleged "alteration" comprises a constitutional violation. In Ponte v. Real, 471 U.S. 491, 497 (1985), the Supreme Court stated that prison officials may be required to explain, in a limited manner, why a witness was not allowed to testify at a disciplinary hearing, but that they "may choose to explain their decision at the hearing, or they may choose to explain it 'later.'" Thus, the fact that a later copy of the offense report reflects additional information, including the reason that a witness was not allowed to testify, does not itself amount to a constitutional violation.

Nor has White shown any constitutionally cognizable harm as a result of the "alteration." Although he argues that it prevented him from appealing the disciplinary case, he wholly fails to show how it did so. The copy of the record which White originally received reflects that the finding of guilt was based upon the officer's report, which is sufficient information for him to construct an appeal based upon the sufficiency of the evidence to support the finding of guilt. White was present at the hearing and thus was aware of the exclusion of any witnesses, and the hearing record gave him sufficient information upon which to appeal the punishment imposed, which punishment was in fact within the TDCJ guidelines for the offense of extortion. White did in fact take an appeal, and offers nothing to show that his appeal would have been different, or had more likelihood of success, had he been given the more complete form originally; he offers only the conclusory statement that "had it not been for these defendants' actions of conspiring to deny Plaintiff a meaningful appeal Plaintiff's disciplinary would have been reversed and thereafter STRICKEN FROM THE RECORD."[1]

---

[1] The primary complaint which White raises concerning the disciplinary case is his contention, repeated throughout his pleadings, that the case was false because the date given for the offense was in December of 2002, at a time when Castillo was no longer at the Michael Unit. White also argued at the evidentiary hearing conducted in this lawsuit that although he was originally charged with "attempted extortion," there was no such disciplinary offense. White fails to show that the alleged deficiencies in the record he received at the hearing prevented him from raising either of these grounds on appeal.

The fact that White originally received a statement which apparently lacked information that was added later may have violated TDCJ rules and procedures, as set out in the TDCJ *Disciplinary Rules and Procedures for Offenders*, available on-line at http://www.tdcj.state.tx.us/publications/publications-home.htm. These procedures specify that at the conclusion of the hearing, offenders shall be given a copy of the written record of the hearing, including various specified information, such as whether the offender was excluded from any part of the evidence stage, whether any requested witnesses were excluded, the evidence presented and considered, and the reasons for the determination of guilt. If the copy of the hearing record given to White at the conclusion of the hearing did not contain this information, the prison rules and policies may have been violated.

However, the Fifth Circuit has held that the mere fact that prison rules were violated is not sufficient to rise to the standards of a constitutional claim. Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996); Hernandez v. Estelle, 788 F.2d 1154, 1158 (5th Cir. 1986). White argues to the contrary, citing a district court case called Spaulding v. Collins, 867 F.Supp. 499, 507 (S.D.Tex. 1993), but the district court's holding in this regard is contrary to more recent Fifth Circuit caselaw and thus has been effectively overruled. Myers, 97 F.3d at 94; Stanley v. Foster, 464 F.3d 565, 569 (5th Cir. 2006). White has failed to show a constitutional violation in this regard.

In his response to the motion for summary judgment, White says that it is "objectively unreasonable" for Taylor to not give him a complete written record at the conclusion of the disciplinary hearing, because TDCJ rules require that this be done. He argues that Taylor has never denied that he failed to give White a written statement at the conclusion of the hearing, and that Taylor later sought to cover up this alleged wrongdoing. Thus, White says that Taylor's actions violated "clearly established law" and so Taylor cannot be entitled to qualified immunity.

Returning to this theme, White goes on to argue that TDCJ has for many years committed fraud by representing to the federal courts that prisoners do not have a liberty interest in their good time credits, when in fact the TDCJ procedures manual specifically says that such a liberty interest exists. He contends that TDCJ officials' failure to follow their own procedures is a violation of his

8

rights, in that he has a "liberty interest" in the prison procedures being strictly adhered to. White also repeats his argument that the offense report was false because Castillo was no longer at the Michael Unit on the date in question.

White says that in denying his appeal, TDCJ relied upon the "criminally altered copy" of the disciplinary record, which enabled Taylor to "profit from his wrongdoing." In addition, he contends that this violated his First Amendment right to file a grievance and use the correct document to have this grievance decided.

White's attempt to elevate an alleged violation of TDCJ rules into a constitutional claim is creative but ultimately unavailing. Similarly, his argument that he has a "liberty interest" in his good time credits is based on statements from the TDCJ policies and procedures manual; any "liberty interest" for constitutional purposes would implicate the legality of the taking of White's good time, which the Fifth Circuit has stated is not at issue here; in fact, the Fifth Circuit's opinion in this case specifically states that White has no liberty interest in his ability to earn future good time credits. White is serving a life sentence for murder, and is therefore ineligible for release on mandatory supervision. The loss of good time thus could only affect White's potential release on parole, in which he does not have a liberty interest under Texas law. Johnson v. Rodriguez, 110 F.3d 299, 308 (5th Cir. 1997). His claim on this point is without merit.

The record shows that at the conclusion of the hearing, White received a form telling him that the evidence used against him was the officer's report. As stated by the Fifth Circuit in Mahogany and in White's own case, the protected right at issue is the right to receive a written statement of the evidence used against him. *See also* Wolff, 418 U.S. at 564 (requiring "a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action.") While it is true that some weeks later, White received another form which contained additional information, Taylor correctly points out in his motion for summary judgment that the form which White received at the conclusion of the hearing satisfied the constitutional requirement of due process by informing him of the evidence which was used against him, which was the officer's report. This provided White

9

with an adequate statement of the evidence so as to allow him to appeal the conviction through the grievance procedure, which he did. Although White says that had he been given the later form, his disciplinary case would have been overturned, he offers nothing to support this speculation; in fact, the record shows that White received this form before he filed his Step Two grievance, which grievance was not successful in securing a reversal of the disciplinary conviction. White's claim against Captain Taylor is without merit.

### II. Designation as a "snitch

White says in his complaint that Major Fox told an inmate named Barnes that he, White, was a snitch, and that in exchange for White's help, Fox was going to get White transferred. He points to "Exhibit K" and "Exhibit T" attached to his complaint.

Exhibit K is a statement by inmate Lewis Barnes, which is signed under penalty of perjury. This statement reads as follows:

> On March 5th I was called to the front office on Michael Unit by Major Fox, on this day he tells me that inmate Dexter White and another inmate Valentine had wrote statements against me concerning security keys. I told the major at this time I did not know either inmate. This is a very serious matter, especially being behind bars.

Exhibit T is an unsigned and unsworn letter, addressed to White, and dated March 27, 2003. This letter reads as follows:

> Well, I'm going to rewrite my legal work for you again. I was taken to the major's office told and was told I was getting a case for writing to you or as the major said, I had lied to him about you. I told him the truth, I didn't know you before he put me on 11 Building, right beside you for two weeks, plus you are only doing my legal work for me. The major said you are the one who put me in here, starting four months ago. I don't even know why I tried to argue with him. How can he talk about someone lying. You know, and I know, we didn't know each other before 11 Building just a few weeks ago. He had the letter I had wrote to you about my Step One on my case, with the grievances I signed. Said you are getting a transfer for the help you have provided. Well looks like you got what you wanted if that's the case, but Dexter I know better, you didn't know me four months ago and I didn't know you, so I need this legal work, I don't know how to do it.

> I'm going to explain once again what all took place plus sign the grievances. The major can't take any more from me, when the craft shop stuff is gone they don't need to ever be coming around. Ho! I should have a lawyer from Palestine by next week. Also tell Rick the major said that Dwight Rawlinson was a friend of his and he wasn't going to help me. I know that is a lie too, that man can only see out of one eye and has 10% only in it because of those people, he hate TDC for what they did.

> Plus I'm not going to stop until the truth comes out, either they can get it or I'm going to get help for them to get it right. I'm not going to allow no one to set me up and I don't do nothing about it.

Although this letter is unsigned, White appears to indicate that it also came from Barnes, and so the Court will proceed under this assumption. White alleges in his complaint that Fox told Barnes that he, White, had "snitched" on Barnes, but the documents he attaches from Barnes show that Barnes did not believe the allegations and in fact stated that he knew that they were not true.

More pertinently, although White alleges that his designation as a 'snitch' followed him to the Darrington Unit, the only evidence he offers in support of this contention is a hearsay assertion from Barnes that Major Fox told Barnes that White had written statements against him. Both Fox and Barnes were at the Michael Unit at that time. White offers nothing whatsoever, beyond sheer speculation, to show that this alleged conversation between Fox and Barnes somehow became known at the Darrington Unit. White says that when he arrived at the Darrington Unit, a classification committee member told him that Warden Velasquez knew about him, but this does not show that Major Fox communicated White's alleged "snitching" to anyone at the Darrington Unit, or that anyone at the Darrington Unit could otherwise have known about the alleged conversation between Fox and Barnes. In fact, White says in his supporting memorandum that he has filed "well over a thousand" complaints against TDCJ, including numerous Section 1983 complaints, a fact which would likely make him known to many wardens and other officials within the prison.

The Testimony at the Hearing

At the evidentiary hearing in this lawsuit, White conceded that nothing happened to him before he got off of the Michael Unit. He said that Fox told Barnes that as a favor to White, Fox was going to have White transferred, and right after this happened, White was transferred to Darrington.

White explained at the hearing that when Velasquez was warden at the Michael Unit, Barnes had been Velasquez's "personal craft shop worker." He said that Velasquez "already knew" that he, White, had snitched on Barnes, although he does not explain how Velasquez could have known this. White argued that the classification committee at the Darrington Unit should have known that he

should not have been taken off of safekeeping, because all they had to do was "patch into the computer" and they could see that the extortion case which White had received was impossible because Castillo had not been on the Michael Unit in December of 2002, when the extortion was alleged to have occurred. When he suggested this to the committee at Darrington, however, they told him that it was "not their job to look in the computer."

White testified that when he first arrived at the Michael Unit, he was put in 11 Building, and Barnes began screaming "who's Dexter White." When White went to the window of his cell and hollered at him, Barnes said "what you doing telling on me." White replied that he did not even know Barnes and what was he supposed to be telling on him for, and Barnes said "yeah, you did, they told me about it." Barnes was then taken to One Building, where Lt. Graham "got in his face" and told Barnes that he was lying, saying "I know you know Dexter White, I want to know what he's doing."[2]

When Barnes returned to 11 Building, White said, he told White that he, Barnes, understood what was going on, that the prison officials were trying to get Barnes to snitch on White by telling him that White had snitched on Barnes. White said that at first, Barnes decided that another inmate, Ballantine, had been snitching on him, but then got to thinking that maybe White had snitched after all. A few days later, Barnes got a disciplinary case for having security keys.

White explained that Major Fox knew that the Texas Mafia prison gang had been the ones involved with the security keys, and so when Fox put White there with a "snitch jacket," White was supposed to be snitching on the Texas Mafia as well as Barnes. He stated that as a result of the disciplinary case over the keys, Barnes lost over 22 years of good time, was dropped in classification status, and was placed in administrative segregation. He said that Barnes had to send all of his craft shop items home and was very angry about it.

---

[2] White acknowledged that he was not at One Building and that he had been told about this conversation by Barnes. He dismissed out of hand the possibility that Barnes may not have told him the truth about these events.

12

Despite all of this, White says that Barnes wrote him a letter wanting him to help with Barnes' appeal of the disciplinary case. The letter was intercepted by Officer Holmes and given to Major Fox, who called Barnes out and told him that he was going to get a disciplinary case for lying to an officer (by saying that he did not know White). It was at this point, according to White, that Fox told Barnes that "Dexter White is the very reason you're in trouble now and for his help snitching on you I'm going to give him a transfer."

White's pleadings, and the convoluted narrative he related at the evidentiary hearing, wholly fail to show any causal link between Major Fox's actions at the Michael Unit and any incidents which may have occurred at the Darrington Unit. This is underscored by the fact that White failed to show that he had any personal knowledge of being designated as a "snitch" by Fox; he makes clear that he is only aware of such an alleged designation because Barnes told him so.

White said that at the Darrington Unit, Assistant Warden Horn said that "Warden Velasquez knows all about you and his craft shop worker"; he speculated that this may have referred to Barnes. However, this one statement does not show that Major Fox labeled White as a snitch or that this designation followed White to the Darrington Unit. White says that Warden Horn told him that he could not be put back on safekeeping because he had an extortion case; White does not challenge the veracity of this statement, but simply argues that the extortion case was "false."[3] In any event, the statement by Horn that "Warden Velasquez knows about you and the craft shop worker" does not show that Fox labeled White as a snitch or that this label followed him to the Darrington Unit. As Fox notes, he was an assistant warden at the Michael Unit and thus lacked the power to transfer inmates at all.

In his response to the motion for summary judgment, White again points to the affidavit from Barnes. This affidavit avers that on March 5, 2003, Barnes was called to the front office by Fox,

---

[3] White contends that the Darrington Unit officials should have conducted an independent investigation of the extortion case which White had received and determined that this case was false, despite the fact that it had been upheld on appeal.

who told him that White and another inmate had written statements against him, but that Barnes replied that he did not know either of the prisoners.

White also supplies an affidavit from an inmate named Robin Frazier, dated April 7, 2010, which says that on August 29, 2004, he was in the chow line at the Darrington Unit, where he overheard an inmate named Loven tell another prisoner that "I got a letter from the homies on Michael, and there is a snitch named Dexter White over here now ... I'm going to smash his snitching-bitch ass good." This incident occurred some 16 months after White's transfer to the Darrington Unit, which occurred in April of 2003.

White offers nothing beyond sheer speculation to show that Fox was linked in any way with a conversation that took place on the Darrington Unit over a year after White was transferred there. There mere fact that an inmate overheard another prisoner say that he had received a letter which referred to White as a snitch does not show that Major Fox had any sort of involvement with this letter, even assuming that such a letter existed.[4] As White's response to the Defendants' motion for summary judgment makes clear, he has had ongoing problems with other inmates for years prior to the incidents in this case, and so the assumption that an overheard conversation in a chow line, over five years before the affidavit was executed, necessarily concerns alleged actions of Major Fox, which themselves occurred over a year before the conversation, is too remote and speculative to stand as viable opposition to the Defendants' motion for summary judgment. The Fifth Circuit has stated that conclusory allegations, improbable inferences, and unsupported speculation are insufficient to defeat a properly supported motion for summary judgment. Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir. 1994); *see also* Michaels v. Avitech, Inc., 202 F.3d 746, 755 (5th Cir. 2000) (noting that if a "mere scintilla" of evidence is presented in support of a position, which would not

---

[4]Because affidavits must be based upon personal knowledge, all that Frazier's statement shows is that he, Frazier, has personal knowledge that Loven told another inmate that he, Loven, had received a letter referring to White as a snitch; the affidavit does not and cannot show the truth of Loven's statement.

14

be sufficient to allow a reasonable juror to conclude that the position more likely than not is true, then the trial court remains free to grant summary judgment).

White also offers an affidavit from an inmate named Joe Robinson, dated May 8, 2003, which says that on April 29, 2003, Robinson heard an officer named Nix apologize to White for what happened in his cell, and White later told Robinson that three officers had assaulted him. As White makes clear, this incident happened on the Darrington Unit, and he offers nothing beyond speculation to show that it was related in any way to any alleged actions of Major Fox at the Michael Unit. Although White argues that "the law is very clear" that the facts and documents which he presents establish an Eighth Amendment violation, in fact his claims are based upon conjecture, supposition, and speculation.

White contends that Fox was involved in the unit transfer because Fox's "fingerprints are all over" the disciplinary case for extortion which White says led to his transfer. He also argues that it is "irrelevant" whether Fox sat on the unit classification board which recommended that he be transferred, and says that at the time that Fox allegedly talked to Barnes, Fox knew that a transfer had been recommended by the Unit Classification Committee "had weeks ago recommended White for transfer." As Fox says in his motion for summary judgment, however, transfers can be ordered only by the State Classification Committee in Huntsville, and can be recommended only by the warden or the unit classification committee, and so he, as a major, could not even recommend a transfer himself, let alone order one. Although White strenuously argues that Fox's alleged involvement in the disciplinary case is sufficient to ascribe personal responsibility to Fox for the unit transfer, this claim is untenable.

In this case, the competent summary judgment evidence, including White's evidence as well as that presented by the Defendants, wholly fails to show any connection between the "snitch designation" at the Michael Unit and the assaults at the Darrington Unit. White's own evidence shows that the "snitch designation" consisted of conversations between Fox and an inmate named Barnes, who stated that he did not believe that White was a snitch. There was no evidence that this

alleged designation followed White to the Darrington Unit or that anyone at the Darrington Unit knew or could have known about the alleged designation, much less that the assaults which occurred at the Michael Unit were related to anything done by Major Fox. White's surmise, speculation, and conjecture are not sufficient to overcome the Defendants' motion for summary judgment. Forsyth, 19 F.3d at 1533. Because White has offered nothing beyond hearsay and speculation to link Major Fox to the subsequent events at the Darrington Unit, his claim against Major Fox is without merit.

## Determination of the Claims at Darrington

Part of the Fifth Circuit's remand directed that the district court "determine whether the transfer of the claims arising in the Darrington Unit was appropriate," a determination which would depend on "the district court's reconsideration of the snitch designation and the alleged injuries suffered as a result of that designation." The competent summary judgment does not support White's assertion that Fox branded him as a snitch, an assertion which he bases on hearsay and speculation. Nor does it support White's unsubstantiated conclusion that the alleged "snitch" designation somehow followed him to the Darrington Unit. The Fifth Circuit has held that speculation is insufficient to create a genuine issue of material fact. Waggoner v. City of Garland, Texas, 987 F.2d 1160 (5th Cir. 1993). In addition, speculation is not a substitute for proof. *See* Love v. King, 784 F.2d 708, 711 (5th Cir. 1986). The Defendants have met their burden of showing that there are no disputed issues of fact and that they are entitled to judgment as a matter of law, and so the burden shifted to White to come forward with evidence sufficient to establish the existence of a genuine issue of material fact, or to show that the Defendants are not entitled to judgment as a matter of law. Because he has failed to meet his burden, the Defendants' motion for summary judgment should be granted.

Although White complains that his alleged assaults at the Darrington Unit were somehow "linked" to events at the Michael Unit, he has offered nothing whatsoever to support such a linkage, or to otherwise show that Major Fox should be liable for the alleged assaults which occurred at the Darrington Unit. Consequently, venue for claims which occurred at the Darrington Unit is proper

in the Southern District of Texas, the district where the incidents occurred and the persons involved are located.

## Qualified Immunity

The Defendants also assert that they are entitled to qualified immunity. The Fifth Circuit has stated that a qualified immunity defense serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's actions were reasonable in light of then clearly existing law. Atteberry v. Nocona General Hospital, 430 F.3d 245, 253 (5th Cir. 2005), *citing* Thompson v. Upshur County, 245 F.3d 447, 456 (5th Cir. 2001). To prevail in a Section 1983 lawsuit, a plaintiff must overcome an officer's defense of qualified immunity. *See* McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (noting that when a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense).

The Fifth Circuit has stated that to discharge this burden, the plaintiff must satisfy a two-prong test. First, he must claim that the defendants committed a constitutional violation under current law, and second, that the defendant's actions were objectively unreasonable in light of federal law which was clearly established at the time of the actions complained of. Atteberry, 430 F.3d at 253; Kinney v. Weaver, 367 F.3d 337, 349-50 (5th Cir. 2004). The prongs of this test are not sequential, but may be reviewed in either order. Pearson v. Callahan, 129 S.Ct. 808, 817 (2009).

In this case, White has failed to discharge his burden of overcoming the Defendants' entitlement to qualified immunity, because he has not shown that any of the Defendants acted unreasonably in light of clearly established federal law. The Fifth Circuit has specifically held that the Plaintiff's burden of overcoming the qualified immunity defense cannot be discharged by conclusory allegations and assertions. Michalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005). White's allegations do not overcome the Defendants' entitlement to qualified immunity, and so the Defendants' motion for summary judgment should be granted on this basis as well.

Although White argues that both Taylor and Fox acted contrary to "clearly established law," his contentions fail to meet his burden of proof. His claim against Fox relies on speculation and conjecture, and his argument regarding Taylor is that the officer violated "clearly established law" by violating TDCJ regulations. This is not the same as a showing that Taylor acted in violation of "clearly established federal law" as is required to overcome the qualified immunity defense, because TDCJ rules and regulations are not equivalent to federal law. Myers v. Klevenhagen, 97 F.3d 91, 94; Hernandez v. Estelle, 788 F.2d 1158. The Defendants are entitled to the defense of qualified immunity.

### The Authority of the Magistrate Judge

In his response to the motion for summary judgment, White complains that the Magistrate Judge "illegally obtained consent" to enter final judgment. He says that at the Spears hearing, the Magistrate Judge "coerced" him into signing the consent form by telling him that she needed him to sign the form so that she could continue to be the judge in the case and figure out who White was suing and why. He says that he was signing the form so that another judge would not be assigned to "figure out who he was suing," which could cause a restarting of the whole case from the beginning; he argues that he had no intention of allowing the Magistrate Judge to enter final judgment in the case.

The form which White signed reads as follows:

> In accordance with the provisions of Title 28, U.S.C. 636(c), the undersigned party or parties to the above-captioned civil matter hereby voluntarily consent to have United States Magistrate Judge Judith K. Guthrie conduct any and all further proceedings in this case, including trial, and order the entry of a final judgment. Any appeal of the case will lie with the United States Court of Appeals unless otherwise noted.

This document, signed by White, makes clear that the intent of the signer is to allow the Magistrate Judge to conduct all further proceedings in the case, including a trial and the entry of final judgment. White's assertion that he did not know and did not intend to consent to the jurisdiction of the Magistrate Judge is belied by this document and by the proceedings at the hearing at which White gave his consent, which make clear that White's consent was knowing and voluntary,

18

The Fifth Circuit has held that a valid consent to trial before a magistrate judge waives the right to trial before an Article III judge. Once that right is knowingly and intentionally waived, as in this case, a party has no constitutional right to recant at will. Carter v. Sea Land Services, Inc., 816 F.2d 1018, 1021 (5th Cir. 1987). A motion to withdraw consent to trial before a magistrate judge may be granted only for good cause, the determination of which is committed to the court's sound discretion. Carter, 816 F.2d at 1021. White has failed to show good cause, and so his challenge to the jurisdiction of the Magistrate Judge to enter final judgment is without merit.

Conclusion

The Court has carefully reviewed the pleadings and testimony in this cause, as well as the competent summary judgment evidence submitted by the parties. Upon such review, the Court has concluded that there is no genuine issue of material fact and that the Defendants are entitled to judgment as a matter of law. The Court has also concluded that the Defendants are entitled to the defense of qualified immunity from suit. It is accordingly

ORDERED that the Defendants' motion for summary judgment (docket no. 136) is GRANTED and that the above-styled civil action be and hereby is DISMISSED with prejudice. It is further

ORDERED that any and all other motions which may be pending in this cause are hereby DENIED.

So **ORDERED** and **SIGNED** this **13** day of **August, 2010.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE